# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| **TRINA CONGRESS**, <br><br> Plaintiff, <br><br> v. <br><br> **DISTRICT OF COLUMBIA**, <br><br> Defendant. | Case No. 17-cv-907 (CRC) |

## MEMORANDUM OPINION

Plaintiff Trina Congress was previously employed as a teacher's aide by the District of Columbia Public Schools ("DCPS"). Compl. ¶ 11. Following her dismissal in May 2015, Congress brought suit against the District of Columbia alleging that DCPS had discriminated against her because of her disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; the Rehabilitation Act, 29 U.S.C. § 794; and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11. The District has moved to dismiss Congress's claims, arguing that she either failed to adequately exhaust her administrative remedies, failed to file suit within the statute of limitations, or failed to state a plausible claim. The Court will grant most of the District's motion, but will deny it solely with respect to Congress's hostile work environment claim raised under the Rehabilitation Act.

## I. Background

The Court draws the following facts from the allegations in Congress's complaint and accepts them as true for purposes of this motion. Congress was hired by DCPS as an Education Aide (or Teacher's Aide) on December 5, 2011. Compl. ¶ 11. At the time of her hiring, Congress had pre-existing nerve damage to her back, feet, shoulder, hands, and hips. Id. Commencing in September 2013, Congress's supervisor, Abdullah Zaki, denied her request for a

key to use the elevator instead of the stairs.  Id. ¶ 12.  Additionally, her coworkers would park in the handicapped parking spaces and thereby prevent her from being able to park in one.  Id. ¶ 13.  On January 29, 2015, Congress was attacked and hit hard on her neck by a student.  Id. ¶ 16.  Her supervisor repeatedly refused to sign paperwork necessary for Congress to receive medications for her pre-existing conditions and for needs related to the January incident.  Id. ¶ 17.

In October 2014, Congress complained to her union that the District was illegally forcing her to cover classes despite her lack of a teaching certification.  Id. ¶ 14.  The next month, on November 10, 2014, the District informed Congress that she was the target of a residency fraud investigation that was closed on July 22, 2013.  Id. ¶ 15.  Congress was subsequently terminated from her job on May 6, 2015, allegedly because of residency fraud.  Id. ¶ 18.

Congress filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 27, 2015, raising a charge of failure to accommodate and retaliation.  Def.'s Mot. Dismiss Ex. A.  The EEOC sent Congress a notice of her right to file suit on October 14, 2016.  Id.  However, Congress did not receive the notice until she physically went to the EEOC office on January 23, 2017.  Compl. ¶ 1.  She filed suit against the District on May 15, 2017.

II. **Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Such factual plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  When addressing a motion to dismiss, the Court "must take all of the factual allegations in the complaint as true," id., and "constru[e] the complaint liberally in the plaintiff's

favor with the benefit of all reasonable inferences derived from the facts alleged." Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006). The Court "may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." Id.

A motion to dismiss for a plaintiff's failure to exhaust administrative remedies is "properly addressed as [a] motion[] to dismiss for failure to state a claim." Scott v. Dist. Hosp. Partners, 60 F. Supp. 3d 156, 161 (D.D.C. 2014). Since failure to exhaust remedies is an affirmative defense, "the defendant bears the burden of pleading and proving it." Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997). Each of the three statutes that plaintiff brings claims under—the ADA, the Rehabilitation Act, and the DCHRA—has its own set of requirements for exhaustion and its own statute of limitations.

First, the ADA: The exhaustion requirements for Title VII of the Civil Rights Act govern administrative exhaustion under the ADA. See 42 U.S.C. § 12117(a). Within 180 days of the allegedly unlawful employment practice, a plaintiff must file a charge with the EEOC. Id. § 2000e-5(e)(1). The EEOC investigates the plaintiff's claim and, once the investigation concludes, issues a right to sue notice or provides a final decision to the plaintiff. Id. § 2000e-5(b). The plaintiff must then bring a federal suit within 90 days of receiving the right to file notice or final decision. Id. § 2000e-5(f)(1).

Second, the Rehabilitation Act: Whether exhaustion of administrative remedies is required before bringing suit under the Rehabilitation Act is an open question in this Circuit. See, e.g., Minter v. District of Columbia, 62 F. Supp. 3d 149, 164 (D.D.C. 2014). The Rehabilitation Act incorporates the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964" and in 42 U.S.C. § 2000e-5(e)(3). 29 U.S.C. § 794a. The only

3

specific section of Title VII referenced in the Rehabilitation Act concerns back pay calculations and not administrative remedies. See 42 U.S.C. § 2000e-5(e)(3). Title VI, in contrast to Title VII, does not contain a requirement to exhaust administrative remedies. See, e.g., Freed v. Consol. Rail Corp., 201 F.3d 188, 191 (3d Cir. 2000); Neighborhood Action Coal. v. City of Canton, 882 F.2d 1012, 1015 (6th Cir. 1989). Because the Rehabilitation Act expressly incorporates Title VI and only one specific provision of Title VII, neither of which require exhaustion of administrative remedies, the Court finds more persuasive the interpretation that the Rehabilitation Act does not require exhaustion of administrative remedies. See, e.g., Minter, 62 F. Supp. 3d at 164; Adams v. District of Columbia, 740 F. Supp. 2d 173, 181–82 (D.D.C. 2010).

Similarly unsettled in this Circuit is the question of what statute of limitations applies to Rehabilitation Act claims. See, e.g., Alexander v. Washington Metro. Area Transit Auth., 826 F.3d 544, 551 (D.C. Cir. 2016) (per curiam). Since the Rehabilitation Act does not itself specify a statute of limitations, "courts generally 'borrow one from an analogous state cause of action.'" Id. There are two possible statutes of limitations to borrow here: the three-year statute for personal injury actions under D.C. law or the one-year statute in the DCHRA. See id. If the one-year statute applies, so too does the DCHRA's tolling provision. Id. The three-year statute contains no tolling provision. See D.C. Code. § 12-301(8).

Third, the DCHRA: There is no exhaustion requirement specified in the DCHRA. See D.C. Code § 2-1402.11. A one-year statute of limitations applies to DCHRA claims. D.C. Code. § 2-1403.16. This statute of limitations is tolled, however, by the "timely filing of a complaint" for the period of time the complaint is pending. Id. Because of a work-sharing agreement between the EEOC and D.C.'s analogous agency, complaints timely filed with the EEOC toll the

4

DCHRA statute of limitations. Jaiyeola v. District of Columbia, 40 A.3d 356, 369 (D.C. 2012); see also Alexander, 826 F.3d at 551.

**III. Analysis**

A. Count I: Discrimination (ADA, Rehabilitation Act, DCHRA)

Congress first raises a claim of disability discrimination in violation of the ADA, Rehabilitation Act, and DCHRA. According to Congress, the District "discriminated against [her] by denying her reasonable accommodation for her disabilities." Compl. ¶ 21. The Court will infer that such requests for accommodations—specifically, a key for the stairs and a handicapped parking spot—occurred no later than September 2013 since Congress's complaint states that the District denied her accommodation "[c]ommencing in September, 2013." Id. ¶ 12.[1] Her complaint does not state that she made any additional requests for an accommodation after that time. Congress filed her EEOC charge on July 27, 2015. Def.'s Mot. Dismiss Ex. A.[2]

The District argues that Congress's claim under the ADA should be dismissed for failure to exhaust administrative remedies. The Court agrees. Congress filed her EEOC charge on July 27, 2015, more than 180 days after the alleged denial of an accommodation in September 2013. See 42 U.S.C. § 2000e-5(e)(1). This claim is thus properly dismissed for failure to exhaust

---

[1] Congress's EEOC charge, in contrast, states that this denial occurred "[i]n about September *of 2012*." Def.'s Mot. Dismiss Ex. A (emphasis added). The Court need not address this discrepancy because the outcome is the same even using the later date.

[2] The Court can permissibly rely on Congress's EEOC charge without converting this to a motion for summary judgment because the document is one that Congress refers to in her complaint, see Compl. ¶ 1, and that her claims necessarily relies on. See, e.g., Charles v. District of Columbia, 164 F. Supp. 3d 98, 100 (D.D.C. 2016), aff'd, 690 F. App'x 14 (D.C. Cir. 2017).

administrative remedies.[3]

This leaves Congress's Rehabilitation Act and DCHRA claims, which the District contends are barred by the applicable statutes of limitations. The Court again agrees. Congress's DCHRA claim carriers a one-year statute of limitations. D.C. Code § 2-1403.16. Congress's suit brought in May 2015 (or April 2015, according to her counsel) falls more than one year after the alleged denial of an accommodation. Nor can she rely on any tolling provision because, as noted, her EEOC charge was not timely filed. Id. (allowing tolling for a *timely* filed administrative charge).

All that remains, then, is Congress's Rehabilitation Act claim. If the Court applies the one-year statute of limitations in the DCHRA to Congress's Rehabilitation Act claim, the outcome is the same as for her DCHRA claim: Congress's suit is barred by the applicable statute of limitations. Nor does the outcome change if the Court applies the three-year statute of limitations. Congress's suit here was filed in 2017, more than three years after her alleged denial of an accommodation in September 2013. Unlike the DCHRA's statute of limitations, the three-year statute of limitations contains no tolling provision. See D.C. Code § 12-301(8). Finally, it would not be appropriate to toll the running of the statute of limitations while Congress's EEOC charge was pending because it is optional, not mandatory, to exhaust administrative remedies under the Rehabilitation Act, as noted above. See, e.g., Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 466 (1975) (refusing to toll statute of limitations on plaintiff's section 1981 claim while he pursued administrative remedies on his Title VII claim); Adams, 740 F. Supp. 2d at

---

[3] Because Congress's EEOC charge was not timely filed, the Court need not resolve the parties' dispute over whether her suit in this Court was timely filed upon receipt of her notice of the right to file.

182–83 (compiling cases).[4] For these reasons, the Court concludes that Congress's Rehabilitation Act claim is also barred by the statute of limitations.

B. Count II: Retaliation (ADA, Rehabilitation Act, DCHRA)

Congress next raises a claim of retaliation under the ADA, the Rehabilitation Act, and the DCHRA. She contends that the District retaliated against her "because she engaged in actions (including Plaintiff's complaints to union representatives) protected by Title VII, the ADA, the Rehabilitation Act, and the D.C. Human Rights Act." Compl. ¶ 25. The District responds that this claim should be dismissed under Rule 12(b)(6) for failure to state a claim.

All three of the statutes that Congress brings suit under prohibit an employer from retaliating against an employee "on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by" the statutes. 42 U.S.C. § 12203 (ADA); see also 29 U.S.C. § 791(f) (incorporating ADA standard in 42 U.S.C. § 12203); D.C. Code § 2-1402.61 ("It shall be an unlawful discriminatory practice to . . . retaliate against . . . any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter.").

To make a prima facie case for retaliation, the plaintiff must allege that she engaged in protected activity, that she suffered an adverse action, and that "a causal link connects the two." Solomon v. Vilsack, 763 F.3d 1, 14 (D.C. Cir. 2014) (citation omitted); see also Arthur Young &

---

[4] The Court will note that even if a Rehabilitation Act plaintiff is required to exhaust her claim using the Title VII exhaustion procedures, the outcome here is yet still unchanged: Congress's claim would be barred for failure to file a timely charge with the EEOC, as discussed above.

7

Co. v. Sutherland, 631 A.2d 354, 368 (D.C. 1993) (applying same framework to DHCRA claims). Congress was eventually fired from her job, which clearly constitutes an adverse action. Compl. ¶ 18. As to the second requirement, Congress points to two possible protected activities: her request for an accommodation in September 2013, id. ¶ 12, and her complaints to her union regarding the District's allegedly illegal practice of assigning her to teach classes that she was not certified to teach, id. ¶ 14.

Unfortunately for Congress, this latter action is not an activity protected *under the relevant statutes*. Although Congress may have a right to report illegal activity free from retaliation under D.C. law, see D.C. Code § 1-615.53, that right is not one "granted or protected by" the ADA, Rehabilitation Act, or DCHRA. Instead, these statutes provide the right to employment free from discrimination on the basis of disability (and, for the DCHRA, other characteristics such as race and gender). See 29 U.S.C. § 794; 42 U.S.C. § 12112; D.C. Code § 2-1402.11. Congress's reporting that the District illegally forced her to cover classes despite her lack of a teacher certification—which Congress does not allege was in any way connected to her disability—lacks any nexus to the protections of the statutes Congress brought suit under and thus is not a "protected activity" for purposes of this suit.

The other possible protected activity is Congress's request for an accommodation. The D.C. Circuit has recognized that a request for accommodation is a protected activity under the ADA and Rehabilitation Act. Solomon, 763 F.3d at 15. But Congress has failed to allege a causal nexus between this protected activity and her firing. Her complaint provides no indication of any connection between her firing in 2015 and her requests for an elevator key and access to handicapped parking spaces made two years earlier. Nor can Congress rely on temporal proximity to make the causal link: temporal proximity can support an inference of causation

8

"only where the two events are 'very close' in time." Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001)). Events almost two years apart are not "very close" in time. Cf. Alston v. District of Columbia, 770 F. Supp. 2d 289, 301–02 (D.D.C. 2011) ("The two-year gap between the 2003 due process hearing and the Summer 2005 Exclusion is too great to suggest a causal link."). Because Congress has not alleged a causal link between her request for accommodation in September 2013 and her May 2015 termination—and because her report of illegal conduct in 2014 was not protected conduct—she has failed to state a claim for retaliation.

C. Count III: Hostile Work Environment (ADA, Rehabilitation Act)

Finally, Congress raises a claim of a hostile work environment under the ADA and the Rehabilitation Act. Although the D.C. Circuit has not so recognized, other Circuits and judges in this District have recognized that the ADA permits hostile work environment claims. See, e.g., Floyd v. Lee, 968 F. Supp. 2d 308, 328 (D.D.C. 2013) (compiling cases). Whether the Rehabilitation Act provides for a hostile workplace cause of action is similarly unresolved by the D.C. Circuit, though judges in this District ordinarily assume such a cause of action exists at the motion to dismiss stage. See, e.g., Sanders v. Kerry, 180 F. Supp. 3d 35, 45 n.10 (D.D.C. 2016); Ragsdale v. Holder, 668 F. Supp. 2d 7, 26 n.17 (D.D.C. 2009); see also Kuraner v. Mineta, No. 00-5416, 2001 WL 936369, at *1 (D.C. Cir. July 10, 2001) (per curiam).

To make out a claim for a hostile work environment, a plaintiff must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (citation omitted). The Supreme Court "ha[s] made it clear that conduct must be extreme to

9

amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

The District contends that Congress's ADA claim should be dismissed for failure to exhaust administrative remedies and her Rehabilitation Act claim dismissed because she insufficiently alleges a hostile work environment claim.[5] With respect to Congress's ADA claim, the Court agrees with the District. Under the ADA, Congress was required to file a charge raising her claim with the EEOC. 42 U.S.C. § 2000e-5(e)(1). However, Congress's EEOC charge, while raising retaliation and denial of an accommodation, is silent as to any hostile work environment allegations. Def.'s Mot. Dismiss Ex. A. Because Congress failed to raise her hostile work environment claim with the EEOC prior to filing suit, the Court will dismiss her claim.

This leaves Congress's Rehabilitation Act claim. Congress contends that her coworkers "made certain that they willfully and illegally occupied every open disability space," that her supervisor was aware of this and refused to prevent it, that her supervisor refused to grant her a key to the elevator, and that her supervisor repeatedly refused to sign paperwork that Congress needed to obtain medical treatment. Compl. ¶¶ 12–13, 17–18. While the Court retains doubts as to whether these allegations, along with any supporting evidence, will constitute harassment pervasive and severe enough to survive summary judgment, it is possible that Congress could prove a set of facts from these allegations rising to the level of a hostile workplace claim. The Court therefore cannot conclude that Congress "could prove *no* set of facts in support of [her] claim that would entitle [her] to relief." Henthorn v. Dep't of Navy, 29 F.3d 682, 684 (D.C. Cir.

---

[5] Unlike the discrimination claims, the District does not allege that Congress's Rehabilitation Act hostile workplace claim is barred by the statute of limitations.

1994) (emphasis added).  It will thus deny the District's motion to dismiss Congress's hostile work environment claim under the Rehabilitation Act.

## IV. Conclusion

For the foregoing reasons, the Court will grant the District's motion in part and deny it in part.  The Court will dismiss Counts I and II of the complaint in their entirety and the ADA claim in Count III, leaving solely the Rehabilitation Act claim in Count III.  A separate Order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:  October 3, 2017