# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**TRINA CONGRESS**,

      Plaintiff,

    v.

**DISTRICT OF COLUMBIA**,

      Defendant.

Case No. 17-cv-907 (CRC)

## MEMORANDUM OPINION

What a difference a lawyer can make. Trina Congress brought suit against the District of Columbia alleging discrimination on the basis of her disability. The District moved to dismiss her original complaint, and the Court dismissed all but one of her claims. Now represented by new counsel, Congress has filed an amended complaint with the District's consent. Once more, the District has moved to dismiss. This time the result is a bit more favorable to Congress. The Court will still grant the District's motion in part, dismissing Congress's ADA claims and two of her Rehabilitation Act claims while keeping the remaining two Rehabilitation Act claims.

### I. Background

#### A. Factual Background

The Court draws this factual background from the amended complaint, assuming the truth of all well-pled allegations as it must on a motion to dismiss. See, e.g., Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014). Plaintiff Trina Congress was hired by the District of Columbia as an Education Aide in December 2011. Am. Compl. ¶ 23. When she was hired, Congress suffered from nerve damage that impaired her physical abilities as a consequence of a prior car accident. Id. ¶¶ 9–10. She informed her supervisor, principal Abdullah Zaki, of her condition after being hired. Id. ¶ 25.

In September 2013, Congress requested an elevator key so she would not have to use the stairs of the school building. Id. ¶ 26. She also requested that Zaki ensure the school's handicap parking spaces were kept available for those with valid placards, such as Congress, so that she could park closer to the school. Id. ¶ 27. Zaki allegedly denied Congress's requests for accommodations. Id. ¶¶ 27, 30. Congress repeated her requests for both the key and an open parking space throughout 2013 and 2014, and claims that Zaki never acted on them. Id. ¶¶ 28, 31.

During 2013 and 2014, Congress also took intermittent medical leave due to her nerve damage. Id. ¶ 33. Nevertheless, Zaki several times denied Congress medical leave and placed her on absent without leave ("AWOL") status. Id. ¶ 35, 51. He also emailed Congress saying that he "had no time for someone being sick." Id. ¶ 37.

On September 9, 2014, Congress submitted a complaint against Zaki to the District's Labor Management and Employee Relations team. Id. ¶ 42. She met with the team in October 2014 to discuss her complaint. Id. ¶ 43. During that meeting, Congress indicated that Zaki had forced her to cover classes that were not included in her job description and that she could not cover because of her disability and requested that Zaki stop assigning her these duties. She also told the team that Zaki placed her on leave and refused to grant her an accommodation such as an elevator key or closer parking spot. Id. ¶¶ 44–47. Immediately after that meeting, Congress was informed that a claim was being asserted against her for alleged residency fraud—a claim she says was "previously adjudicated" in July 2013. Id. ¶¶ 49–50.

In January 2015, Congress claims she was assaulted by a student, which aggravated her pre-existing nerve damage. Id. ¶ 53. From January 29 through May 4, Congress was on workers compensation leave due to the injuries she suffered in the assault. Id. ¶ 54. While she was on

leave, Zaki gave Congress a negative performance evaluation that was later forced to be rescinded due to inadequate documentation. Id. ¶¶ 55–57. He also refused for several months to sign paperwork necessary to allow the relevant insurance carrier to process Congress's claims for treatment stemming from her injuries. Id. ¶ 60.

On May 6, 2015, shortly after Congress returned to work, Zaki terminated her employment, allegedly because of dishonesty associated with the residency fraud claim. Id. ¶ 62. A few months later, in July 2015, Congress filed a charge of discrimination against the District with the Equal Employment Opportunity Commission (EEOC) and the D.C. Office of Human Rights. See MTD Ex. 1. In her complaint, Congress checked the boxes for retaliation and disability discrimination and detailed how Zaki had refused to provide her an elevator key or parking spot and terminated her employment. Id.

B. Procedural History

After receiving a right to sue letter from the EEOC, Congress brought suit against the District of Columbia. Her original complaint raised three claims: (1) discrimination on the basis of her disability due to a failure to provide a reasonable accommodation, in violation of the Americans with Disabilities Act ("ADA"), Rehabilitation Act, and D.C. Human Rights Act; (2) retaliation because of protected activities, in violation of the ADA, Rehabilitation Act, and D.C. Human Rights Act; and (3) creation of a disability-based hostile work environment, in violation of the ADA and Rehabilitation Act. See Compl. ¶¶ 20–27. The District filed a motion to dismiss, which the Court granted as to all but Congress's hostile work environment claim under the Rehabilitation Act. See Congress v. District of Columbia, 277 F. Supp. 3d 82, 86 (D.D.C. 2017).

While the parties were undergoing discovery, Congress's original counsel filed a motion to withdraw. See Mot. Withdraw Attorney [ECF No. 17]. Following a sealed, ex parte hearing, the Court granted the motion. See Order [ECF No. 18] (Jan. 24, 2018). The Court also stayed discovery for a period of 30 days from the date of the Order to allow Congress to seek new counsel. Id. The stay was extended for an additional 60 days on Congress's request. See Minute Order (Jan. 31, 2018).

On March 20, 2018, Congress's new (and current) counsel entered a notice of appearance. He also filed a motion seeking reconsideration of the Court's prior dismissal ruling or, alternatively, leave to file an amended complaint. After the District indicated its consent to the filing of an amended complaint, the Court granted the motion to amend, denied the motion for reconsideration as moot, and directed the District to file an answer or motion to dismiss the amended complaint. See Minute Order (May 8, 2018). In response, the District once more moved for dismissal.

**II. Legal Standards**

    A. Rule 12(b)(6) standards

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. To make this determination, the Court "must take all of the factual allegations in the complaint as true." Id. It also must "constru[e] the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."

Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006). Finally, the Court may only "consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." Id.

   B.  Exhaustion of Administrative Remedies

Arguments that a plaintiff failed to exhaust administrative remedies are ordinarily addressed through the vehicle of a motion to dismiss under Rule 12(b)(6). See, e.g., Scott v. Dist. Hosp. Partners, 60 F. Supp. 3d 156, 161 (D.D.C. 2014). As an affirmative defense, the District bears the burden of pleading and proving failure to exhaust. Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997).

The ADA and Rehabilitation Act each have their own set of exhaustion requirements and statutes of limitations. As to the ADA, the requirements for Title VII of the Civil Rights Act govern exhaustion of administrative remedies. See 42 U.S.C. § 12117(a). An aggrieved party must file a charge with the EEOC within 300 days of the allegedly unlawful employment practice.[1] Id. § 2000e-5(e)(1). She must then file her federal suit within 90 days of receiving a right to sue letter or a final agency decision. Id. § 2000e-5(f)(1).

As to the Rehabilitation Act, as explained in the Court's opinion on the prior motion to dismiss, it is an open question in this Circuit whether exhaustion of administrative remedies is required. See Congress, 277 F. Supp. 3d at 87. In light of the Rehabilitation Act's incorporation of the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964" and in 42 U.S.C. § 2000e-5(e)(3)—none of which involve exhaustion of administrative remedies—

---

[1] The statute provides that aggrieved parties typically have 180 days to file a charge with the EEOC. However, when the EEOC has a work-sharing agreement with its state counterpart, as it does with the District of Columbia, this deadline is extended to 300 days. See, e.g., Tucker v. Howard University Hosp., 764 F. Supp. 2d 1, 6 (D.D.C. 2011).

the Court continues to believe that the more persuasive interpretation is that the Rehabilitation Act does not require exhaustion as a prerequisite to suit. See id. The statute of limitations for Rehabilitation Act claims also remains an open question in this Circuit. Id.; see also Alexander v. Washington Metro. Area Transit Auth., 82 F.3d 544, 551 (D.C. Cir. 2016) (declining to resolve this question). The Court will address that issue in more detail below.

C. Substantive Law

Both the Rehabilitation Act and the ADA prohibit discrimination on the basis of disability. See 29 U.S.C. § 794 (Rehabilitation Act); 42 U.S.C. § 12112(a) (ADA). To state a claim, a plaintiff must allege: (1) that she has a disability as defined in the ADA or Rehabilitation Act, (2) that she was qualified for her position, and (3) that she suffered an adverse employment action because of her disability. See, e.g., Blackwell v. SecTek, Inc., 61 F. Supp. 3d 149, 156 (D.D.C. 2014).[2]

While the D.C. Circuit has not so held, other circuits and judges in this District have found that the ADA also permits plaintiffs to raise a claim for a hostile work environment. See, e.g., Floyd v. Lee, 968 F. Supp. 2d 308, 328 (D.D.C. 2013) (compiling cases). As for the Rehabilitation Act, judges in this District ordinarily assume that it, too, permits a hostile work environment claim. See, e.g., Sanders v. Kelly, 180 F. Supp. 3d 35, 45 n.10 (D.D.C. 2016); see also Kuraner v. Mineta, 2001 WL 936369, at *1 (D.C. Cir. July 10, 2001) (per curiam). To make out such a claim, a plaintiff must allege that her employer "subjected [her] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of

---

[2] Because the Rehabilitation Act and the ADA have similar standards for the most part, courts generally use cases interpreting the two statutes interchangeably. See, e.g., Chenari v. George Washington Univ., 847 F.3d 740, 746 (D.C. Cir. 2017).

6

[her] employment and create an abusive working environment." Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (internal quotation omitted).

Finally, both the ADA and the Rehabilitation Act protect an employee from retaliation "on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by" the statutes. 42 U.S.C. § 12203 (ADA); see also 29 U.S.C. § 791(f) (incorporating ADA standard in 42 U.S.C. § 12203). To make a prima facie case for retaliation, the plaintiff must allege that she engaged in protected activity, that she suffered an adverse action, and that "a causal link connects the two." Solomon v. Vilsack, 763 F.3d 1, 14 (D.C. Cir. 2014) (citation omitted).

**III. Analysis**

Congress's amended complaint raises four main claims under both the ADA and the Rehabilitation Act: (1) disability-based hostile work environment, (2) retaliatory hostile work environment, (3) disability discrimination, and (4) retaliatory discharge. The District has moved to dismiss all of Congress's claims.

    A. <u>Congress's Hostile Work Environment Claims (Counts I and II)</u>

Congress first raises two hostile work environment claims—one based on her disability and one retaliatory—under the ADA and the Rehabilitation Act. The District argues that Congress's ADA claims must be dismissed for failure to exhaust administrative remedies because she did not raise a hostile work environment claim in her EEOC complaint. It further argues the Rehabilitation Act claims should be dismissed because Congress did not file suit within the applicable statute of limitations.

7

*1. Whether Congress exhausted her ADA claims.*

As a precursor to bringing suit, as noted above, Congress must have exhausted her remedies for her ADA claims. To do so, she must have raised the claims she brings in her federal suit in her EEOC charge. See, e.g., Marshall v. Federal Express Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997).

Congress's administrative charge, however, makes no mention of a hostile work environment.[3] In the charge's narrative description, Congress stated that she was "denied . . . a reasonable accommodation," namely "an elevator key to avoid using the stairs" and by "not preventing faculty members from parking in the handicap space." MTD Ex. 1. Congress further alleges that after she complained in October 2014 "about teaching classes that [she] was not supposed to teach," an "investigator told [her] that she would be investigated for dishonesty" and she was thereafter discharged "for dishonesty that stemmed from" that investigation. Id. Congress also noted Zaki's refusal to sign paperwork for her to receive medication after the attack from the student. Id.

This administrative charge reads like a textbook example of failure to accommodate and retaliation. Congress says she was denied accommodations she requested and, following complaints, she was discharged. Nowhere does Congress reference the hallmarks of a hostile work environment claim, such as harassment from coworkers or insulting or disparaging comments. Nor does Congress's narrative description indicate a continued pattern of conduct as is typical of a hostile work environment claim. Rather, it describes discrete events—being

---

[3] The Court may consider Congress's administrative filing because it is incorporated into her complaint, Am. Compl. ¶ 8a. See, e.g., Charles v. District of Columbia, 164 F. Supp. 3d 98, 100 (D.D.C. 2016), aff'd, 690 F. App'x 14 (D.C. Cir. 2017).

8

denied an accommodation, being discharged—without linking them together into a pattern of events that might form a hostile work environment. In all, Congress's charge provides little if any notice that she intended to bring a hostile work environment claim.

Congress nevertheless urges the Court to read her EEOC charge as raising a hostile work environment claim given the more lenient standard that applies for exhausting such claims. True, courts do not require a plaintiff to have invoked a hostile work environment claim by name or to use specific "magic words" in order to exhaust it. See, e.g., Brokenborough v. District of Columbia, 236 F. Supp. 3d 41, 50 (D.D.C. 2017). But typically the plaintiff must offer at least *some* suggestion of a hostile work environment in the charge narrative, such as by referring to an ongoing pattern of conduct or describing a workplace pervaded by abuse. See, e.g., Leach v. Nat'l Railroad Passenger Corp., 128 F. Supp. 3d 146, 153 (D.D.C. 2015) (finding plaintiff exhausted hostile work environment claim where her EEOC charge said her workplace "became hostile" and she felt "intimidated, threatened and nervous at work"); Whorton v. WMATA, 924 F. Supp. 2d 334, 341 (D.D.C. 2013) (finding plaintiff exhausted hostile work environment claim where her EEOC charge said that she was "subject to a continuous pattern of discrimination, harassment, and retaliation" from her peers).

Congress's charge does neither. Her description of discrete events that indicate a failure to accommodate or retaliation could not be "reasonably expected upon investigation to lead to a hostile work environment claim," Park, 71 F.3d at 908. As a consequence, Congress did not raise a hostile work environment claim in her EEOC charge.

   2. *Whether Congress's Rehabilitation Act claims were timely filed.*

The District next argues that Congress's hostile work environment claims under the Rehabilitation Act should be dismissed because she failed to file them within the requisite statute

of limitations period. [4] As an initial matter, the parties dispute what the appropriate statute of limitations is for a Rehabilitation Act claim. The Rehabilitation Act contains no specific statute of limitations, and as a result "courts generally 'borrow one from an analogous state cause of action.'" Alexander, 826 F.3d at 551. The District contends that the appropriate statute of limitations is the one-year statute of limitations in the D.C. Human Rights Act. MTD at 10–11; see D.C. Code § 2-1403.16(a). Congress, in turn, asks the Court to apply the three-year statute of limitations for personal injury suits under D.C. law. Opp'n 9–10; see D.C. Code § X.[5] Unlike in the prior motion dismiss, the Court must resolve this dispute: since Congress was discharged in 2015 and filed suit in 2017, her claims are likely untimely under the one-year statute of limitations but timely under the three-year statute of limitations.

The Court ultimately agrees with the District that the D.C. Human Rights Act is the more analogous state cause of action and will apply its one-year statute of limitations. Admittedly, judges within this District have typically applied the three-year statute of limitations to Rehabilitation Act claims. See, e.g., Adams v. D.C., 740 F. Supp. 2d 173, 184 (D.D.C. 2010); Gordon v. D.C., 605 F. Supp. 2d 239, 245 (D.D.C. 2009). However, the D.C. Court of Appeals recently held that the D.C. Human Rights Act was the most analogous D.C. cause of action and applied its one-year statute of limitations. Jaiyeola v. District of Columbia, 40 A.3d 356, 368

---

[4] The Court has not previously considered whether Congress's Rehabilitation Act hostile work environment claims were timely because the District did not raise that argument in its motion to dismiss the original complaint. See Congress v. District of Columbia, 277 F. Supp. 3d 82, 90 n.5 (D.D.C. 2017).

[5] Congress states in her opposition that the Court previously applied the three-year statute of limitations. Pl.'s Opp'n at 9–10. This statement is inaccurate. In its prior opinion, the Court did not decide which statute of limitations should apply to Rehabilitation Act claims because the challenged claims were untimely under either the one-year or three-year statute. See Congress, 277 F. Supp. 3d at 88–89.

10

(D.C. 2012). The Court is aware of no decisions after Jayieola that have addressed in detail whether the three-year or one-year statute of limitations should be applied. See, e.g., Alexander, 825 F.3d at 551 (declining to resolve the question because the plaintiff's claims were timely under either statute of limitations).

The Court finds Jaiyeola's reasoning persuasive. As the Court of Appeals explained, D.C. Human Rights Act and the Rehabilitation Acts have a "shared purpose and ambitious aims"—both seek to end discrimination against individuals with disabilities. 40 A.3d at 367. To achieve that goal, "both statutes create private causes of action for disabilities who have been victimized by disability discrimination" and both allow for a similar set of remedies including compensatory damages and equitable relief. Id. And "both statutes employ substantially the same definition of the term 'disability.'" Id. The only real substantive difference between the two goes to the scope of their coverage: the D.C. Human Rights Act prohibits discrimination on additional bases such as gender and race and "applies broadly to proscribe discrimination in employment, membership in labor unions, housing and real estate transactions, public accommodations, and education institutions." The Rehabilitation Act, on the other hand, focuses solely on discrimination against individuals with disabilities by programs or activities receiving federal funds. Id. at 365. But these differences of scope do not override the similarities at the core of the two statutes.

The D.C. Human Rights Act thus provides a more analogous cause of action to the Rehabilitation Act than the general personal injury statute. D.C. personal injury claims cover a much wider swath of injuries, often including conduct that involves no discrimination whatsoever, whereas the D.C. Human Rights Act is targeted to discrimination specifically. See id. at 367–68. Given the similarity of purpose, rights, and remedies, the D.C. Human Rights Act

11

is a better fit for the Rehabilitation Act. See Wolsky v. Medical College of Hampton Roads, 1 F.2d 222, 224 (4th Cir. 1993) (applying statute of limitations in Virginia Rights of Persons with Disabilities Act to Rehabilitation Act claims).[6]

Finally, the decision here to apply the one-year statute of limitations is also consistent with the deference owed to the D.C. Court of Appeals on matters of D.C. law. Cf. Williams v. Martinez, 586 F.3d 995, 1001 (D.C. Cir. 2009) ("[O]n questions of District of Columbia law this court defers to the D.C. Court of Appeals."). Of course, which statute of limitations to apply to Rehabilitation Act claims is a question of federal, not D.C., law and the decision in Jaiyeola is not binding on this Court. But the determination as to which D.C. cause of action is most akin to the Rehabilitation Act turns on an interpretation of D.C. law. The Court therefore accords considerable persuasive weight to the conclusion of the D.C. Court of Appeals, as the final authority on D.C. law, that the D.C. Human Rights Act is the more analogous cause of action. For all these reasons, the Court will apply the one-year statute of limitations to Congress's Rehabilitation Act claims. Since Congress's suit was filed more than one year after her discharge, her Rehabilitation Act claims are untimely.

---

[6] The Court recognizes that many courts of appeals have applied personal injury statutes to Rehabilitation Act claims. See Wolsky, 1 F.3d at 224 (collecting cases). In some situations, this is because the state lacked an analogous law prohibiting disability discrimination that had a statute of limitations to borrow. See id. (discussing cases). Other courts have analogized to suits brought under 42 U.S.C. §§ 1981 and 1983, for which courts borrow state personal injury statute of limitations. See, e.g., Jaiyeola, 40 A.3d at 365 (discussing this trend). But suits under 42 U.S.C. §§ 1981 and 1983 have no direct counterpart in state law. See, e.g., Wilson v. Garcia, 471 U.S. 261, 272 (1985), superseded in part by 28 U.S.C. § 1658. In contrast, the Rehabilitation Act does have a direct counterpart in D.C. law, namely the D.C. Human Rights Act and its analogous prohibition against disability discrimination. As a result, the Court is not persuaded by the general tendency to apply the personal injury statute of limitations to Rehabilitation Act claims.

Congress further argues that the tolling provision in D.C. Human Rights statute of limitations saves her claims even under the one-year statute of limitations. Opp'n at 10 n.8. As the D.C. Circuit has recognized, if the Court borrows the D.C. Human Rights Act's statute of limitations, it must also borrow its tolling provision. See Alexander, 826 F.3d at 551. The D.C. Human Rights Act provides that the "timely filing of a complaint" with the EEOC or the D.C. Office of Human Rights "shall toll the running of the statute of limitations while the complaint is pending." D.C. Code § 2-1403.16(a).

Since she filed a timely complaint with the D.C. Office of Human Rights, Congress contends her claim is still timely by operation of this tolling provision. But as discussed above, Congress's charge with the D.C. Office of Human Rights did not raise a hostile work environment claim. Her filing of the complaint therefore cannot toll the statute of limitations for her hostile work environment claims in this Court. See, e.g., Rush v. Federal Nat'l Mortgage Ass'n, 208 F. Supp. 3d 1, 11–12 (D.D.C. 2016) (holding that filing of complaint with D.C. Office of Human Rights did not toll statute of limitations as to religious retaliation claim because the complaint did not raise any such claim). Since more than one year passed between Congress's discharge and her filing of her Rehabilitation Act hostile work environment claims and the tolling provision does not apply here, Congress's Rehabilitation Act hostile work environment claims are untimely.

 B. Congress's Discrimination Claim (Count III)

The District next argues that Congress's disability discrimination claims must be dismissed. As to her APA claim, it contends that Congress did not timely file suit. As to her Rehabilitation Act claim, it maintains that Congress fails to allege a proper claim.

*1. Whether Congress timely filed her ADA claims.*

As to Congress's ADA discrimination claim, the District does not argue that she failed to raise such a claim in her EEOC charge—nor could it, since the charge explicitly states that Congress was "discriminated against" because of her disability "in violation of the Americans with Disabilities Act." MTD Ex. 1. Rather, the District submits that Congress failed to file suit within 90 days of receiving her right to sue letter. The District notes that her right to sue letter was dated October 14, 2016, but Congress did not file suit until May 15, 2017 according to the docket. In turn, Congress argues that she did not *receive* her right to sue notice until January 23, 2017 and her prior counsel (unsuccessfully) attempted to file suit April 17, 2017, less than 90 days later, making her suit timely.

The Court need not address the first dispute—when Congress received the right to sue letter—because even assuming she received it on the later date, her suit still was not timely filed. Congress alleges she received her right to sue letter January 23, 2017. Am. Compl ¶ 8b. The original complaint in this case was filed on May 15, 2017. This is more than 90 days after the right to sue letter was received.

Congress nevertheless insists that her suit is timely in light of her prior counsel's unsuccessful attempt to file suit April 17, 2017, which is within the 90-day period. Opp'n at 8 n.5. But Congress's counsel admitted he was not an active member of this Court's bar at the time he attempted to file the complaint on April 17. See Pl.'s Mem. Law Supp. Opp'n Def.'s Mot. Dismiss at 5. Under Court's local rules, in order for an attorney to file a case on behalf of a

client, she must be an active member of this Court's bar. LCvR 83.2.[7] Consequently, Congress's former counsel could not file a complaint or open her case on April 17, 2017.

The cases that Congress cites regarding when a complaint is considered filed do not apply here. Those cases involve situations where clerks improperly rejected filings because of an issue of form, such as paper size or failure to pay a filing fee. See, e.g., Innovatit Seafood Sys., LLC v. Comm'r for Patents, 240 F.R.D. 23, 25 (D.D.C. 2007). The clerks' rejection of the filings in those cases directly violated Federal Rule of Civil Procedure 5(d)(4), which states that a clerk "must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." But whether the attorney seeking to file the complaint is a member of the Court's bar is not an issue of *form*. These cases, based as they are on Rule 5(d)(4)'s prohibition, are thus inapposite. In sum, Congress's former counsel could not—and thus did not—file her original complaint on April 17, 2017. The Court will thereafter treat the complaint as filed on May 15, 2017 as the docket states. That date falls more than 90 days after the date Congress allegedly received her right to sue notice, making her ADA claims untimely.[8]

2. *Whether Congress states valid Rehabilitation Act claims.*

The District next argues that Congress's discriminatory discharge claim should be dismissed because she does not allege a valid claim. MTD at 18–19. To state a valid claim,

---

[7] There are exceptions to this rule, such as for attorneys employed by the United States government or attorneys representing indigent clients, but none of them apply here. See LCvR 83.2.

[8] Nor can Congress rely on equitable tolling to save her ADA claims. Equitable tolling is not appropriate in cases with "garden variety claim[s] of excusable neglect." Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 96 (1990). Where, as here, "counsel blundered to his client's prejudice, the remedy is malpractice litigation against the culprit, not the continuation of litigation against an adversary who played no role in the error." Farzana K. v. Indiana Dep't of Educ., 473 F.3d 703, 706 (7th Cir. 2007).

15

Congress need only allege that (1) she was a qualified individual with a disability, (2) her employer knew of her disability, and (3) she suffered an adverse employment action because of her disability. See, e.g., Blackwell, 61 F. Supp. 3d at 156. Her complaint plausibly alleges precisely that. See Am. Compl. ¶¶ 20–22 (alleging Congress suffers a disability, namely nerve damage); id. ¶ 25 (alleging Congress informed her supervisor of her disability); id. ¶¶ 62, 84–87 (alleging Congress was terminated because of her disability). She therefore states a valid claim, and the Court will deny the government's motion.

### C. Congress's Retaliation Claim (Count IV)

Finally, the District moves to dismiss Congress's retaliation claim for the same reasons as her discrimination claim: because her ADA claim is untimely and because she does not allege a Rehabilitation Act claim. As discussed above, the Court agrees as to Congress's ADA retaliation claim and will grant the government's motion.

As for her Rehabilitation Act retaliation claim, the District specifically argues that Congress has not alleged a sufficient causal link between any protected activity and the adverse action (here her termination). While the Court dismissed this claim in the original complaint, it concludes that Congress has now stated a valid claim.

To start, Congress now alleges she engaged in protected activity under the statute. Specifically, she claims that at an October 2014 meeting, she complained about Zaki's failure to provide her accommodations. Am. Compl. ¶¶ 46–47. Complaining about a failure to receive an accommodation is protected activity for purposes of a retaliation claim. See, e.g., Solomon v. Vilsack, 763 F.3d 1, 15–16 (D.C. Cir. 2014). In addition, Congress also now alleges a causal link between this protected activity and her eventual discharge. Congress's complaint states that immediately after this meeting, the District re-opened a previously-adjudicated residency fraud

investigation against Congress. Am. Compl. ¶ 49. This residency fraud investigation was the reason given for Congress's eventual firing. Id. ¶ 63. These facts provide sufficient allegations to give rise to a causal inference: immediately after Congress allegedly complained about not receiving an accommodation, the District re-opened a pretextual investigation that provided the excuse to fire her.

The District, in turn, argues that while temporal proximity can supply a causal inference, the length of time between the meeting (October 2014) and Congress's discharge (May 2015) is too long to do so in this case. But the relevant temporal relationship is not between the meeting and Congress's discharge, but rather between the meeting and the alleged re-opening of the investigation that provided an excuse for Congress's discharge. Those two events are close enough in time to allow for a causal inference. See, e.g., Hamilton v. Geithner, 666 F.3d 1344, 1358–59 (D.C. Cir. 2012) (stating that three-month temporal gap supported inference of causation). Thus, Congress states a valid retaliation claim.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the District's motion to dismiss. It will dismiss all of Congress's ADA claims and the two Rehabilitation Act hostile work environment claims. However, it will allow Congress's other two Rehabilitation Act claims, for discriminatory discharge and retaliation, to proceed to discovery. A separate Order shall accompany this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: August 27, 2018